UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISMAEL MUNOZ FERRER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:18-cv-00494-GSA<br><br>**ORDER REMANDING CASE FOR FURTHER PROCEEDINGS UNDER SENTENCE 4 OF 42 U.S.C. § 506(g)** |

**I.　Introduction**

Plaintiff Ismael Munoz Ferrer ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 20, 21 and 22. Having reviewed the record as a whole, the Court finds that the ALJ erred in failing to give appropriate deference to Plaintiff's VA disability rating, or to articulate a reasonable basis for disregarding it.

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 10.

1

Accordingly, the Court reverses the Commissioner's denial of benefits to Plaintiff and remands this matter to the Commissioner for further proceedings consistent with this order.

## II. Procedural Background

On October 6, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning April 17, 2013. AR 21. The Commissioner denied the application initially on January 20, 2015, and upon reconsideration on March 30, 2015. AR 21. On May 13, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 21.

Administrative Law Judge Sheila Walters presided over an administrative hearing on September 29, 2016. AR 57-95. Plaintiff appeared and was represented by an attorney. AR 57. Impartial vocational expert Timothy J. Farrell (the "VE") also testified. AR 57.

On December 22, 2016, the ALJ denied Plaintiff's application. AR 21-33. The Appeals Council denied review on February 7, 2018. AR 1-7. On April 10, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony

Plaintiff (born July 3, 1971) lived with his wife, two adult daughters and a granddaughter. AR 62. Plaintiff completed high school and spent two months studying air conditioning. AR 63.

Plaintiff served four years in the U.S. Navy. AR 64. He was rated 100 percent disabled and received VA compensation. AR 65. Other prior jobs included warehouse clerk, shipping clerk, blending wine, racking hose and wine company warehouse work. AR 69-70. He drove a truck and a forklift. AR 72. In April 2013, Plaintiff stopped working because of his mental and physical impairments. AR 72. Thereafter he was unable to secure other employment. AR 73.

On a typical day, Plaintiff waters the plants, dusts the house and sometimes cleans the backyard. AR 66. Plaintiff's wife does the housework, laundry, shopping and cooking. AR 67.

Plaintiff has painful headaches, often after a stressful day. AR 87. Plaintiff also experiences lower back, knee and ankle pain. AR 73-74. His doctors have discouraged surgery in favor of physical therapy. AR 73-74. Plaintiff has seen a physical therapist twice monthly

///

since 2011. AR 74. Plaintiff participates in trauma counseling weekly as well as group therapy. AR 76. He has a history of alcohol abuse. AR 80-81.

Plaintiff can walk, stand or sit for an hour in an eight-hour work day. AR 76-77. He can sit for 20 to 30 minutes at a time. AR 77. He can lift about ten pounds. AR 77. Plaintiff reported memory problems, difficulty getting along with others and problems with crowds of more than six people. AR 78. He used a CPAP machine and hearing aids. AR 79.

The ALJ observed that Plaintiff paused before responding to questions. AR 82. Questioned about the reason, Plaintiff explained that he had "too much stuff" in his head, including memory and guilt. AR 83. Some days were worse than others. AR 84. On bad days, usually about 20 per month, Plaintiff did not leave his home. AR 84.

Plaintiff had difficulty concentrating and completing tasks. AR 84-85. He was distracted by things such as a reflection in the television screen which appeared to be a person behind him. AR 85. Plaintiff did not watch television because there were "things [he] might see on T.V. that [he did not] want to see." AR 85. Although Plaintiff felt "safe" with other veterans, he did not enjoy socializing with friends or others who might ask him questions. AR 85-86. When the ALJ observed that Plaintiff appeared nervous during the hearing, Plaintiff confirmed that he was anxious around other people. AR 86.

### B. Adult Function Reports

In his adult function report, dated November 20, 2014,[3] Plaintiff stated that his PTSD, anxiety, depression and panic attacks resulted in occupational and social impairments, hypervigilance and difficulty in adapting to a work-like setting as well as establishing and maintaining effective work. AR 235. He experienced nightmares, sleep apnea and "triggers." AR 236. Plaintiff was easily overwhelmed and frustrated. AR 239.

Plaintiff had difficulty with nearly all physical and mental activities except using his hands. AR 240. He used prescription hearing aids. AR 241. He could not pay attention and became frustrated trying to follow instructions. AR 240. He had difficulty with authority figures,

///

---

[3] Plaintiff's adult function report was prepared by his wife Gloria L. Munoz. AR 242.

3

stress and changes in routine. AR 241. Noises at night triggered anxiety and nightmares. AR 241.

Because he did not trust his surroundings, Plaintiff did not go out alone. AR 238. Generally, his wife drove him where he needed to go. AR 239. Twice weekly Plaintiff attended an alcohol and drug meeting and a PTSD group at a VA clinic. AR 239.

Plaintiff's daily activities included VA appointments, television, cleaning the garage or the yard and playing with his granddaughter. AR 236. He needed constant reminders to perform personal care and take his medications. AR 236. Although his chores included cleaning the garage, gardening, taking out trash, and sometimes doing the dishes, Plaintiff was not always able to complete the task without requiring many time-outs. AR 237. Usually, he preferred to just stay in his room. AR 237. Plaintiff enjoyed gardening and fishing. AR 239.

Plaintiff's wife acted as his caregiver.[4] AR 238. She cooked and paid the bills. AR 238.

### C. Medical Records

Nearly all of Plaintiff's medical care was provided by the Veteran's Administration facilities in San Jose, Stockton, Livermore and Palo Alto (the "VA").[5] His diagnoses included obesity, diabetes mellitus without complication, depressive disorder, anxiety, headache, concussion with loss of consciousness of unspecified duration, metabolic disturbances, post-traumatic stress disorder, obstructive sleep apnea, unspecified sleep disturbances (anxiety), alcohol dependence, episodic alcohol abuse, lumbago, hyperlipidemia and elevated liver function. AR 289-90, 300. Treatment included peer support services and group psychotherapy; physical and recreational therapy; and, regular physical care.

Plaintiff's headaches and PTSD relate, at least in part, to the portion of his military career in which his unit built prison facilities for prisoners of war in Iraq. AR 563. Until construction was completed, Plaintiff's unit also had duty shifts to guard the prisoners in an inadequate facility with insecure fences. Because guards and prisoners sometimes occupied the same space,

---

[4] The VA formally recognizes the role of a veteran's caregiver. Plaintiff's wife attended classes and received various forms of support in her care of Plaintiff. *See, e.g.,* AR 585-88.

[5] Plaintiff served as a petty officer in the U.S. Navy from 2002 to 2006. AR 317. He was honorably discharged. AR 326.

prisoners could physically assault the guards. On three occasions Plaintiff suffered head injuries as the result of such attacks. AR 538. Plaintiff continued to experience intrusive memories about abusing and threatening prisoners. AR 557. Following his return from deployment, Plaintiff's drinking was "out of control." AR 562.

From July 2 to 6, 2012, Plaintiff was hospitalized for acute psychiatric issues of depression and suicidal ideation. AR 314-15. Plaintiff reported recent marital stress and alcohol abuse. AR 315. He had frequent nightmares following the traumatic experience of working as a prison guard while stationed in Iraq. AR 315. His discharge diagnosis was:

> Axis I      Depressive Disorder NOS
>               Alcohol abuse r/o dependence
>               R/O PTSD
>
> Axis II     Deferred
>
> Axis III    CBP, OSA, HL
>
> Axis IV    Marital conflict and recent separation
>
> Axis V     Current GAF: 40

AR 314-15.[6]

Psychiatrist Divya Reddy, M.D., encouraged Plaintiff to participate in PTSD outpatient treatment program following discharge. AR 320. Plaintiff attended the recommended programs. AR 328.

Magnetic Resonance imaging of Plaintiff's lumbar spine in June 2014 revealed degenerative changes, most severe at L1-2, L4-5 and L5-S1. AR 275-76. July 2014 x-rays of

///

---

[6] The Global Assessment of Functioning (GAF) scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 31-40 corresponds to some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or moos (e.g., depressed man avoids friends, neglects family, and is unable to work). *Id.*

Plaintiff's right hip showed mild superolateral acetabular degenerative spurring but no significant degenerative joint space loss, fracture or degenerative change. AR 274.

### D. Medical Opinions

#### 1. Agency Psychologist and Psychiatrist

Based on evidence submitted before December 10, 2014, Richard Kaspar, Ph.D., diagnosed Plaintiff with affective disorders and substance addiction disorders. AR 97, 101. Dr. Kaspar opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence and pace; and, no repeated episodes of decompensation of extended duration. AR 101. He concluded that Plaintiff's mental impairments did not meet or equal any listing, and that Plaintiff's primary impairment was sustaining sobriety. AR 102.

In response to the mental residual functional capacity assessment, Dr. Kaspar opined that Plaintiff had no significant limitations in remembering locations and work-like procedures; understanding, remembering and carrying out very short and simple instructions or detailed instructions; performing activities within a schedule, maintaining regular attendance and being punctual within a customary tolerance; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; making simple work-related decisions; asking simple questions or requesting assistance; and, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. AR 105-06. Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 106. On reconsideration, A. Garcia, M.D., agreed. AR 118-120.

///

### 2. Agency Physicians

In the initial review of Plaintiff's application, Charles K. Lee, M.D., opined Plaintiff had degenerative arthritis and minimal degenerative disc disease at L4 and L5-S1. AR 105. In Dr. Lee's opinion, Plaintiff could lift 25 pounds frequently and 50 pounds occasionally, and sit, stand or walk for six hours in an eight-hour work day. AR 103. He had unlimited ability to balance and climb ramps or stairs; frequently could stoop, kneel, crouch or crawl; and, could occasionally climb ropes, ladders or scaffolds. AR 103-04. Plaintiff had no manipulative, visual or communicative limitations. AR 104. He must avoid concentrated exposure to humidity, vibrations, extreme heat or cold, fumes, odors, dusts, gasses and poor ventilation, and hazards such as machinery and heights. AR 104. L. Kiger, M.D. agreed on reconsideration. AR 118.

## IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was

///

inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

### VI. **Summary of the ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended onset date of April 17, 2013. AR 23. His severe impairments included: obesity; obstructive sleep apnea; diabetes mellitus with associated peripheral neuropathy; degenerative disc disease of the lumbar spine with associated radiculitis; degenerative joint disease of the left knee, right ankle and toes; major depressive disorder; anxiety disorder; and, post-traumatic stress

disorder (PTSD). AR 23. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). AR 24.

The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). AR 26. He was limited to occasional stooping, kneeling, crouching and crawling; precluded from climbing ladders, ropes and scaffolds or working around hazards such as unprotected heights and dangerous machinery; and, needed to avoid concentrated exposure to extreme heat or cold, humidity, vibration and pulmonary irritants such as fumes, odors, dust, smoke, gases and poor ventilation. AR 26. Plaintiff was limited to simple, routine tasks and no more than occasional interaction with supervisors, coworkers and the public. AR 26.

Plaintiff was not able to perform any of his past relevant work. AR 31. Considering his age, education, work experience and residual functional capacity, jobs that Plaintiff was able to perform existed in significant numbers in the national economy. AR 32. Accordingly, the ALJ found that Plaintiff was not disabled from April 17, 2013, through December 22, 2016 (the date of the hearing decision). AR 33.

**VII.**     **Evaluation of the Veterans' Administration Disability Rating**

Acknowledging that the Commissioner was not bound by the Veterans' Administration's determination that Plaintiff was completely disabled, Plaintiff contends that the ALJ nonetheless erred by failing to provide persuasive, specific or valid reasons for rejecting the VA rating. Doc. 20 at 10. The Commissioner counters that the ALJ appropriately considered the VA disability rating and provided persuasive, specific and valid reasons for reaching a different conclusion. AR 22 at 15. The Court agrees with Plaintiff that the ALJ erred in failing either to give appropriate deference to the VA disability rating or to articulate a reasonable basis for disregarding it.

         **A.**     **Evidence of the VA Rating**

On July 30, 2014, clinical psychologist Lauren L. Dill completed an initial Post Traumatic Stress Disorder (PTSD) disability benefits questionnaire. AR 321-33. Dr. Dill found that

9

Plaintiff had three distinct mental disorders: PTSD, depressive disorder and alcohol use disorder as well as a traumatic brain injury which resulted in occupational and social impairment with deficiencies in most areas, such as working, school, family relations, judgment, thinking or mood. AR 322-23.

Also on July 30, 2014, Corine Cesana, M.D., reviewed Plaintiff's back problems which began with back sprain that Plaintiff incurred while moving stores on board the ship on which he was stationed. AR 333-35.[7] Following a physical examination, Dr. Cesana diagnosed degenerative arthritis and minimal degenerative disc disease at L4 and L5-S1. AR 335. The doctor concluded that it was as likely as not that Plaintiff's back problems were attributable to his military service. AR 335.

Plaintiff's verified 2014 service connected disability rating was PTSD, 70 percent; sleep apnea, 50 percent; and intervertebral disc syndrome, 20 percent. AR 313. The record does not include any later documents indicating Plaintiff's VA disability ratings.

On February 5, 2015, Howard H. Fenn, M.D., reviewed disability benefits for Plaintiff's PTSD. AR 549-59. After reviewing Plaintiff's symptoms and treatment, Dr. Fenn opined that Plaintiff's PTSD impairment remained unchanged since July 2014. AR 559. The doctor opined that Plaintiff's then-current GAF was 55.[8] AR 559.

On February 5, 2015, Laura B. Kinsel, M.D., reviewed disability benefits associated with Plaintiff's spinal condition and sleep apnea. AR 569-81. After examining Plaintiff and reviewing Plaintiff's medical records, Dr. Kinsel diagnosed degenerative arthritis of the spine. AR 570. Dr. Kinsel opined that (1) Plaintiff's degenerative disc disease and lumbar sprain preclude him from lifting and stooping and (2) chronic sleep disturbance and fatigue preclude his performing work accurately and safely. AR 579. Dr. Kinsel concluded that Plaintiff's sleep apnea was no longer a limiting factor in Plaintiff's ability to work since he used a CPAP device. AR 584.

///

---

[7] The evidence is unclear whether these documents, which the VA printed on December 10, 2014, are complete.

[8] A global assessment of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994).

**B.     Standard of Review**

"[A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching [her] decision."[9] *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). A VA rating is not conclusive, however. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Ordinarily, an ALJ must give great weight to a VA disability determination, but she may give less weight if she "gives persuasive, specific, valid reasons for doing so that are supported be the record." *McCartey*, 298 F.3d at 1076.

In both *McCartey* and *McLeod* the ALJ failed even to mention the claimants' VA disability ratings. Accordingly, the Ninth Circuit reversed the district court decision affirming the denial of Social Security benefits in each of these cases. However, "[s]imply mentioning the existence of a VA rating is not enough." *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018). In *Luther,* "[t]he ALJ erred because she did not give great weight to the VA disability rating and did not provide any persuasive, specific, and valid reasons for rejecting it." *Id.*

An ALJ may not reject a VA rating based on a general finding that the VA and SSA disability inquiries differ. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009). Simply observing that differences exist between the rules governing VA and SSA does not constitute a persuasive, specific, and valid reason for the Commissioner to disregard the VA rating. *Id.* An ALJ can only meet the standard of rejecting the VA rating by articulating persuasive, specific and valid reasons that are supported by the record as a whole and based on evidence not available in the VA's disability determination. *Id.* In other words, "the acquisition of new evidence or a properly justified reevaluation of old evidence constitutes a 'persuasive, specific, and valid reason … supported by the record.'" *Id.* (quoting *McCartey*, 298 F.3d at 1076). For example, an ALJ had sufficient basis to reject a VA disability rating when he explicitly stated his reliance on later medical reports and the testimony of the claimant and the vocational expert. *Atwood v. Astrue*, 742 F.Supp.2d 1146, 1154 (D. Or. 2010). *See also Carinio*

---

[9] *McCartey* was based on the prior version of 20 C.F.R. § 404.1504, which was amended January 18, 2017, and effective for claims filed on or after March 27, 2017. The prior version, which was addressed in *McCartey*, is applicable here.

*v. Berryhill*, 736 Fed.Appx. 670, 673 (9th Cir. 2018) (holding that the ALJ appropriately relied on evidence subsequent to the VA determination).

If the hearing decision fails "to articulate an acceptable reason for affording the ALJ's determination little weight," courts may not speculate on reasoning sufficient to justify rejection of the VA rating. *Taylor v. Colvin*, 196 F.Supp.3d 1120, 1127 (N.D. Cal. 2016). In the absence of a detailed explanation of the ALJ's reasoning, a court must be "wary of speculating about the basis of the ALJ's conclusion—especially when his opinion indicates that the conclusion may have been based exclusively upon an improper reason." *See Valentine*, 574 F.3d at 695 (quoting *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)).

### C. The ALJ's Analysis in Plaintiff's Case

In this case, the hearing decision neither made factual findings concerning Plaintiff's VA rating, nor specifically addressed the content of the VA rating questionnaires that were included in the record. In a single paragraph, the ALJ acknowledged the VA rating but gave it reduced weight in her disability analysis based generally on her analysis of the evidence in the administrative record:

> The undersigned is mindful that the claimant has been found disabled by the Veteran[s'] Administration ("VA") and is currently receiving disability payments from that agency. Although the VA and Social Security Administration ("SSA") disability programs are similar, the criteria for determining disability are not identical. The SSA makes determinations of disability according to Social Security law; therefore, a determination of disability by another agency is not binding on this proceeding (20 C.F.R. § 404.1504, *see also* S.S.R. 96-5p on issues reserved to the Commissioner). The undersigned has taken this opinion into consideration; however, for the reasons discussed in detail with respect to the opinions of Drs. Lee, Kiger, Kaspar, and Garcia, the undersigned finds the claimant's residual functional capacity sufficiently accounts for his impairments and associated limitations. Thus, the undersigned disagrees in light of this opinion being over-restrictive and gives it reduced weight.

AR 31 (citations to administrative record omitted).

As stated above, the ALJ's finding that the criteria for Social Security and VA disability benefits differ is not a cognizable basis for rejecting a VA disability rating. *Valentine*, 574 F.3d at 695. The only question that the Court must resolve is whether the ALJ's reference to the

///

opinions of the agency physicians (Drs. Lee, Kiger, Kaspar, and Garcia) constituted a persuasive, specific and valid reason sufficient to reject Plaintiff's VA disability rating.

First, the Court cannot conclude that the agency physician's opinions represent the acquisition of new evidence. *See Valentine*, 574 F.3d at 695. For the initial review, the opinions of Drs. Kaspar and Lee were provided on January 20, 2015, before the VA's February 2015 review and revision of Plaintiff's VA rating. Although Drs. Kiger and Garcia issued their respective reconsideration opinions following the February 2015 VA review and revision, both of the reconsideration opinions restated the language of the initial decisions and concluded that there had been no change in Plaintiff's condition since the agency's initial review. The ALJ did not explicitly state that she relied on later medical reports or the testimony of the claimant or the vocational expert. See *Atwood*, 742 F.Supp.2d at 1154.

In sum, the ALJ neither gave great weight to Plaintiff's VA disability rating, nor gave persuasive, specific, valid reasons for disregarding the VA rating that were supported by the record. *See McCartey*, 298 F.3d at 1076. On remand, the Commissioner is directed to consider fully the medical evidence and analysis performed of the VA treating and examining physicians and psychologists as well as the analysis set forth in the VA disability benefits questionnaires.

### VIII. Improper Analysis of Plaintiff's Residual Functional Capacity

Plaintiff challenges the Commissioner's determination of his residual functional capacity, contending that no substantial evidence in the record supported the ALJ's determination of his residual functional capacity. The Commissioner disagrees, responding that the ALJ appropriately construed the evidence to reach her conclusion.

Analysis of this issue implicates two concerns. First, although the ALJ rejected the VA disability rating in favor of the opinions of the agency physicians, she never discussed the opinions of the VA physicians who examined Plaintiff and provided their opinions concerning his functional impairments. Second, as Plaintiff directly contends in her challenge to the residual functional capacity determination, the ALJ determined Plaintiff's residual exertional level with no explicit support in the evidence.

///

**A.     Weighing Medical Opinion**

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An uncontradicted opinion of a treating or examining physician may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. An ALJ may reject the opinion of a treating or examining physician that is contradicted by the opinion of another physician only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The Commissioner must generally give more weight to medical opinions from a claimant's treating sources since treating professionals are most able to provide a detailed, longitudinal picture of the claimant's medical impairments and may provide a unique perspective to the medical evidence that cannot be drawn from objective medical findings along or from reports of individual examinations. 20 C.F.R. § 404.1527(c)(2). "The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments." *Lester*, 81 F.3d at 833.

In this case, the hearing decision does not name any of Plaintiff's treating physicians nor discuss any of their diagnoses or prescribed treatment. Instead, the hearing decision generally refers to treatments and test results, without reference to time or provider. In addition, the hearing decision omits any explicit reference to the VA rating questionnaires, despite their preparation by

VA physicians who examined Plaintiff, reviewed his ongoing medical treatment by VA physicians and other medical professionals, and drew conclusions concerning his ability to perform in a work environment with his diagnosed conditions.

Instead, the ALJ focused almost exclusively on the opinions of the non-examining agency physicians, even though she disagreed with their assessments of Plaintiff's residual functional capacity. The opinion of a non-examining physician may constitute substantial evidence only when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755). Here, the ALJ relied exclusively on the opinions of the agency physicians and psychologist with little consideration of the opinions of treating and examining physicians or the medical evidence of record provided by Plaintiff's treating physicians at the VA.

As stated above, "this court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings . . . are not supported by *substantial evidence in the record as a whole*." *Tackett*, 180 F.3d at 1097 (emphasis added). The Commissioner's decision cannot be affirmed simply by isolating a specific quantity of supporting evidence. *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). The reviewing court must look to the record as a whole. *Id.* For example, reversal may be necessary when an ALJ ignores substantial evidence in the record indicating that the Plaintiff is disabled within the Act, particularly when the omitted evidence concerns long-term impairments. *Penny v. Sullivan*, 2 F.3d 953, 957 (9th Cir. 1993). This is particularly true when the Commissioner relied on the opinion of a non-treating or non-examining physician. *Id.*

The ALJ's failure to consider all medical evidence and opinions, combined with her reliance on the opinions of the non-examining agency physicians and indifference to the treating and examining physicians resulted in an opinion that cannot be said to be supported by substantial evidence in the record as a whole.

///

## B. The ALJ's Determination that Plaintiff Can Perform Light Work

Plaintiff further contends that the ALJ erred in determining the Plaintiff was capable of light work in the absence of a medical opinion that Plaintiff was capable of light work. The Commissioner counters that because residual functional capacity is a legal concept, the ALJ's finding was reasonably supported by the evidence in the record despite the absence of supporting opinion.

"[A]n ALJ may not act as his own medical expert as he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Decisions addressing this issue frequently speak of an ALJ's "play[ing] doctor and making [his] own independent medical findings." *See, e.g., Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006). *See, e.g., Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ erred in rejecting medical opinion based on the ALJ's belief that claimant's attempts to operate a small business were inconsistent with a diagnosis of major depression).

In this case, no medical or psychological opinion supported the conclusion that Plaintiff was able to perform light work. Despite the ALJ's general statement that her determination of Plaintiff's residual functional capacity was "supported by the medical evidence record, the claimant's testimony, the opinions of Drs. Kaspar and Garcia, and the partial opinions of Drs. Lee and Kiger," no substantial evidence in the record supported the ALJ's conclusion that Plaintiff could perform light work.

## C. Summary

By disregarding evidence relating to the VA's determination of Plaintiff's disability rating, the ALJ disregarded both Plaintiff's medical treatment records and the opinions of his treating and examining physicians. On remand, the Commissioner will fully address the medical treatment evidence of record and the opinions of the treating and examining physicians.

## IX. Reliability of Plaintiff's Subjective Testimony

Plaintiff challenges the ALJ's determination that Plaintiff's testimony was not fully credible, contending that the determination was not supported by clear and convincing evidence. Doc. 20 at 12. The Commissioner counters that the hearing decision in this case appropriately

applied the regulatory requirement that the claimant's alleged symptoms must "reasonably be accepted as consistent with the objective medical evidence and other evidence" to be considered limitations of the claimant's capacity to work. Doc. 22 at 17-18 (citing 20 C.F.R. § 404.1529(c)(4)).

In light of the ALJ's failure to consider fully the evidence and opinions of record, the Court cannot affirm a reliability determination predicated on the inconsistency of Plaintiff's testimony with the evidence of record. In reaching this conclusion the Court focuses primarily on the guidelines for evaluating symptoms in disability claims set forth in S.S.R. 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016. Under S.S.R. 16-3p, the ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." S.S.R. 16-30, 2017 WL 5180304 at *10 (October 25, 2017).

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by "clear and convincing evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). To determine whether the ALJ's findings are supported by sufficient evidence a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes*, 881 F.2d at 750.

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." S.S.R. 16-3p at *6. Because objective medical evidence may reveal the intensity, persistence and limiting effects of a claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are consistent with medical signs and laboratory findings of record. *Id.*

///

17

Because the Court determined that the ALJ erred in disregarding VA treatment records and the opinions of Plaintiff's treating and examining physicians in sections VII and VIII above, it cannot accept a reliability determination based on incomplete consideration of the evidence of record. Accordingly, the determination that Plaintiff's testimony was unreliable is reversed.

### IX. Conclusion and Order

It is hereby ordered that this case be REVERSED and REMANDED to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings in accordance with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff, Ismael Munoz Ferrer, and against Defendant, Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **October 7, 2019**          **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE